IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JEFFREY EARL LAWHORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-481 |
| | ) | |
| NORTEL NETWORKS, INC., and | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for the recovery of long-term disability insurance benefits ("LTD"). Now before the court are the motion for judgment filed by defendants, Nortel Networks, Inc. ("Nortel") and the Prudential Insurance Company of America ("Prudential"), [doc. 20] and the motion for judgment filed by plaintiff. [Doc. 18]. For the reasons stated herein, plaintiff's motion will be denied, defendants' motion will be granted, and judgment will be entered in favor of defendants.

I.

*Procedural Background*

Nortel maintains a self-funded welfare benefit plan which provides short-term disability ("STD") as well as LTD benefits for employees who meet the requirements for

eligibility. Nortel serves as the plan administrator. [A.R. 0043].[1] Prudential is the LTD claims administrator. [A.R. 0043, 0046].

Plaintiff was formerly employed by Nortel as a field technician and was covered by the benefit plan. [A.R. 1013]. He initially received STD benefits due to a back injury and then was placed on LTD effective December 16, 2001. [A.R. 1011].

Under the plan, a participant may apply for LTD after a twenty-six week STD period. [A.R. 0011, 0015]. The plan establishes two LTD phases.

> *During the first 18 months* of a covered Total Disability (from the first date of STD), you will be considered unable to work *if you cannot perform the work you were normally performing at the time of your disability* with or without reasonable accommodations for the limitations resulting from your Illness or Injury.
>
> *After the first 18 months* of covered Total Disability (from the first date of STD), you will be considered unable to work *if you are unable to perform any reasonable occupation*. A "reasonable occupation" is any job you are or could become qualified to do with your education, training or experience.

[A.R. 0016] (emphasis added). In either phase, the plan further provides that a claimant is "considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an Illness or accidental Injury, and the clinical evidence supports this opinion." [A.R. 0016].

By letter dated November 12, 2002, applying the "unable to perform any reasonable occupation" standard, Prudential notified plaintiff that his LTD would be

---

[1] References to "A.R." indicate a page or pages of the administrative record.

terminated effective December 16, 2002 - the date on which his initial eighteen month period expired. [A.R. 0264].[2] Plaintiff submitted a request for reconsideration. Prudential again concluded that plaintiff does not meet the "unable to perform any reasonable occupation" standard. [A.R. 0399].

Plaintiff then filed a second administrative appeal, with Nortel, on December 30, 2003. [A.R. 0372]. By letter dated August 11, 2004, Nortel notified plaintiff that it would uphold the decision terminating his LTD. [A.R. 0087]. This action followed.

II.

*Bad Faith / Breach of Fiduciary Duty / Rehabilitation Assistance Claim*

Before reviewing the administrative record and discussing the merits of plaintiff's LTD benefits claim, the court must first briefly address a recurring issue in plaintiff's filings - defendants' alleged "failure and refusal to . . . provide the plaintiff with rehabilitative assistance otherwise required by the policy at issue." [Doc. 22, p. 22]. In both his initial (¶¶ 9, 10) and amended (¶¶ 10, 11) complaints, plaintiff claims

> . . . a breach of the Defendants' fiduciary duties to assist the Plaintiff in . . . providing vocational rehabilitation and assistance to the Plaintiff.
>
> . . . the Defendants' failure to provide rehabilitative assistance to the Plaintiff is such action as to constitute bad faith . . . .

On October 25, 2004, defendants filed a motion to dismiss [doc. 5], specifically addressing plaintiff's bad faith and breach of fiduciary duty claims. By

---

[2] Plaintiff's benefits were subsequently extended through February 28, 2003, due to the surgical removal of a benign lung tumor. [A.R. 0399].

3

memorandum and order dated April 28, 2005, the court dismissed plaintiff's bad faith breach of contract claim because such claims are preempted by ERISA. [Doc. 10, p.2]. In addition, rather than dismissing the ERISA fiduciary claim, the court construed plaintiff's pleadings as "attempting to assert a claim pursuant to 29 U.S.C. § 1132(a)(1)(B)[.]" *Id.*[3]

In his subsequent briefing to the court [docs. 18, 22], plaintiff continues to raise the issue of defendants' purported failure to provide him with "mandatory" rehabilitation assistance. To the extent that plaintiff is asserting "bad faith" or any other state law theory, plaintiff is reminded that his state law claims have already been dismissed. To the extent that plaintiff seeks recovery under ERISA's breach of fiduciary duty provision, 29 U.S.C. § 1109,[4] plaintiff is reminded that § 1109 "allows relief only for an entire plan and not for individual participants or beneficiaries." *Bagsby v. Cent. States, Se. & Sw. Areas Pension Fund*, 162 F.3d 424, 430 (6th Cir. 1998).

---

[3] "A civil action may be brought by a participant or beneficiary to recover to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

[4]

> [T]he Plaintiff claims that both Defendants jointly and/or collectively violated certain fiduciary duties owed to the Plaintiff, including the duty of giving rehabilitative assistance, for which the Defendants have otherwise taken a Pontius Pilate attitude of indifference. *The Plaintiff claims that the Defendants' actions constitute a violation of 29 U.S.C. § 1109*. The Plaintiff seeks recovery against Prudential under the theory of a breach of fiduciary duty which encompasses . . . the Defendants' failure and refusal to provide rehabilitative assistance[.]

[Doc. 22, p. 23] (emphasis added).

4

Lastly, to the extent that plaintiff's rehabilitation claim could be construed as having been brought under § 1132(a)(1)(B) "to enforce his rights under the terms of the plan," the court cannot agree that defendants owed plaintiff a "mandatory" duty regarding rehabilitation services. The plan employs the word "mandatory," but only in the context that *plaintiff* could be required to participate in a rehabilitation program. [A.R. 0021]. This provision is triggered only if a claimant is "deemed able to be rehabilitated[.]" [A.R. 0021]. Plaintiff cites the court to no plan definition of the term "deemed able to be rehabilitated," nor does he cite any occasion where either defendant "deemed [him] able to be rehabilitated."[5] Further, the administrator's rehabilitation service responsibilities are phrased in discretionary, rather than mandatory, terms.[6] For all these reasons, plaintiff's attempt to resuscitate his bad faith / rehabilitation claim is not well-taken.

III.

*Standard of Review*

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

---

[5] In its November 2002 letter, Prudential mentions "*possible* job placement assistance." [A.R. 0812] (emphasis added).

[6] "*[I]f* you are deemed able to be rehabilitated . . . . *If* this plan determines that a program that should make you self-supporting is within your ability, the plan *may* pay certain expenses of a vocational rehabilitation program *at the discretion of* the Plan Administrator. *If this benefit applies to you* . . . ." [A.R. 0021-22] (emphases added).

5

plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989). However, if a plan grants the administrator or fiduciary the appropriate discretionary authority, this court must employ the "highly deferential arbitrary and capricious standard of review . . . ." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). A plan's grant of discretionary authority to the administrator must be "express." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir. 1990); *see also Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994) (requiring "a clear grant of discretion") (emphasis in original).

The parties agree that the subject plan contains a clear, express grant of discretionary authority to Nortel. [A.R. 0052]. The court will therefore employ the arbitrary and capricious standard in its review.

IV.

*Administrative Record*

Plaintiff alleges that in August 2000 he suffered "an onset of low back pain while pulling heavy power cable through a building." [Doc. 18, p. 7]. He contends that, as a result, "the medical records, the hands-on examination, and a review of the administrative record in its totality reveals that [he] remains permanently and totally disabled." [Doc. 18, p. 18].

Orthopedist Sidney Wallace treated plaintiff from February through June, 2001. In May 2001, Dr. Wallace "recommended an MRI of the lumbar spine. . . . [and gave

6

plaintiff] a note to limit his work[.]" [A.R. 0440]. After reviewing the MRI, Dr. Wallace opined that plaintiff "has a large broad based disc at L5-S1 . . . . I think he is a good candidate for a one level discectomy and fusion. . . . I would like for him to see Dr. Maguire, one of my associates, and let him discuss this in depth with him." [A.R. 0440].

Dr. James Maguire agreed with Dr. Wallace's assessment. [A.R. 0441]. On June 29, 2001, Dr. Maguire performed an anterior lumbar interbody fusion at L5-S1. [A.R. 0443]. Two weeks later, plaintiff reported marked improvement in his back pain. [A.R. 0443]. However, he complained of worsening pain the following month. [A.R. 0444-45]. In November 2001, plaintiff reported increased mobility and decreased pain following therapy, but Dr. Maguire noted that "[h]e still has a way to go though in terms of achieving the status necessary to return to *his job*." [A.R. 0447] (emphasis added). On March 12, 2002, Dr. Maguire wrote

> I think he has probably reached maximum medical improvement at this point. He would have a 20% impairment to the body as a whole based on the 5th Edition Guides to Impairment published by the AMA. I would permanently restrict him to lifting no more than 20 pounds, doing no repetitive stooping or bending. Also, I think he would have trouble in occupations that involved prolonged standing without allowing him to sit.

[A.R. 0450].[7] At his next appointment, Dr. Maguire described plaintiff as "doing fairly well but he still has to take an occasional pain pill. He has aching discomfort in his back when

---

[7] In March and July of 2002, Dr. Maguire completed evaluation statements for Prudential which were consistent with his March 12 notes. [A.R. 0827-28, 1006-07]. On the latter of these forms, Dr. Maguire stated that he was "unsure" of plaintiff's prognosis for return to work at that time due to "recurrent back pain." [A.R. 0827].

he increases his activity level." [A.R. 0450].

Eckman/Freeman and Associates generated a May 2002 Vocational Rehabilitation Report on behalf of Prudential. [A.R. 0849-52]. The report concluded, in material part, that plaintiff's "restrictions, per Dr. Maguire, indicate he is capable of performing work at the Light physical demand level with no repetitive stooping or bending and no prolonged standing." [A.R. 0849].

Plaintiff was then apparently treated by pain specialist David Wohlwend. In a December 19, 2002 letter "to whom it may concern," Dr. Wohlwend wrote that plaintiff

> . . . is under my care and continues to be totally disabled from work secondary to failed back syndrome. He has chronic pain with levels of 5 with medication and levels of 8-9 without medication on a scale of 1-10 with 10 being the worst pain. He can not stand longer than 30 minutes and he has to change position often. He has limited lifting, bending and stooping ability.

[A.R. 0805]. Dr. Wohlwend appears to have offered similar opinions on a nearly-illegible Disability Insurance Report Form completed the same week. [A.R. 0806]. The administrative record contains no other pages generated by Dr. Wohlwend.

Knoxville Physical Therapy performed a Functional Capacity Evaluation ("FCE") in May 2003, following five hours of testing over a three day period. [A.R. 0430-36]. The FCE concluded that plaintiff falls into the sedentary job classification, although he "does not tolerate prolonged static position of sitting that most sedentary positions require." [A.R. 0433].

8

On June 17, 2003, orthopedist William Kennedy performed an Independent Medical Examination ("IME"). [A.R. 0423–28]. Dr. Kennedy concluded that

> Future activities of daily living and employment should not require repeated bending, stooping, or squatting; vigorous pushing or pulling; working over rough terrain or in rough vehicles; any ladder climbing or excessive stair climbing; or working with his hands raised above the level of his shoulders. Ideally, he should be able to control his posture with respect to sitting or standing. Sitting should not exceed 30 minutes at a time for at least 3/4 of a workday. Standing and walking should not exceed 10 minutes at a time for a maximum of 1/4 of a workday. Maximum lifting and carrying should be no greater than about 10 pounds occasionally or 5 pounds frequently assuming a level lift.

[A.R. 0428].

Dr. Kennedy's business partner, Dr. Norman Hankins (a psychologist and certified vocational expert), generated a Vocational Evaluation Report on February 5, 2003. Following an interview and testing, Dr. Hankins concluded that

> Prior to his back impairment and fusion surgery, Mr. Lawhorn was very employable as an electronics technician and equipment tester, jobs for which he had special vocational training including an Associates Degree. He was also employable for a range of lesser skilled jobs. *With the pain and restrictions indicated by Dr. Wohlwend*, he cannot perform the essential functions of his prior job. I do not believe that he can meet the demands of any other job for which he is qualified in terms of his age, education, and work experience for as long as he has his current restrictions.

[A.R. 0800-01] (emphasis added). Dr. Hankins revised his Vocational Evaluation Report on January 5, 2004, adding in material part that

> The FCE ... showed that Mr. Lawhorn does not tolerate the prolonged static position of sitting that most sedentary positions require. With an inability to sit or stand for more than fifteen to twenty minutes at a time, Mr. Lawhorn is unable to meet the demands of . . . any . . . sedentary occupation.

9

> In summary, I do not believe that Mr. Lawhorn can meet the demands of the work he was normally performing at the time of his disability or any other reasonable occupation for which he is qualified in terms of his education, training, or experience *with the restrictions indicated by Wohlwend, the FCE ordered by Dr. Maguire, and those of Dr. Kennedy who agrees with the results of that FCE.*

[A.R. 0190] (emphasis added).

On September 26, 2003, Dr. Patrick Foye reviewed plaintiff's file on behalf of Prudential.[8] Dr. Foye's report concludes that

> The medical records are very clear at indicating that the claimant has a history of chronic low back pain for the past few years, treated with 6-29-01 L5-S1 surgical fusion. After the surgery, there was some temporary complication of wound healing, but this resolved. Unfortunately, he continued to have persistent or recurrent low back pain. However, the physical exams have generally indicated a normal neurologic status (generally showing normal strength, reflexes, and sensation in the bilateral lower extremities, as well as bilaterally negative straight leg raising). Further, repeatedly x-rays have demonstrated good positioning of the fusion cage and no evidence of loosening of the hardware or the fusion on any of the x-rays. . . . The treating Orthopedic Surgeon (Dr. Maguire) has on 3-19-02 essentially given his opinion for restrictions/limitations that would generally [be] considered to allow a worker to perform sedentary work activities, predominately in the seated position. The positional restrictions were predominately for avoidance of prolonged standing, and even implying sitting as the solution for this.

---

[8] Two days before Dr. Foye's report, plaintiff was awarded disability insurance benefits by the Social Security Administration on the basis of his back impairment. [A.R. 0166-72]. Of course, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan. . . . [E]ntitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria." *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005).

> From my review of the medical records related to his lumbar spine, it would appear that the claimant should be capable of performing sedentary work activities, perhaps with using [an] ergonomic chair to minimize his discomfort, and with the occasional break for a few minutes every hour or two, at least to allow him to stand and stretch for a couple of minutes if necessary throughout the workday. . . . From my review of the information, I would expect the claimant to be able to lift up to 10 pounds (as would be required for sedentary work activities), so the IME doctor (Dr. Kennedy) and I mostly agree in general terms here. Dr. Kennedy does recommend against sitting for more than 30 minutes at a time, which to me seems somewhat more restricted than would be justified by the physical exam or the medical records in this case, but I would generally agree that he could sit for at least 30 minutes and probably for an hour or two if necessary . . . . The 2-5-03 vocational assessment has demonstrated that the claimant has intelligence and clerical abilities that are above normal, without evidence of cognitive deficits. The conclusion of the vocational report is indicating that he is not able to perform "any" job, but this point is stated to originate with restrictions by Dr. Wohlwend, rather than from any obvious deficits during the vocational assessment itself. (Actually, the 12-19-02 letter from Dr. Wohlwend (Pain Management) [opines] that the claimant is "totally disabled from work" but it actually has no restrictions indicated against sitting and from my review of the records there is not documentation to justify complete disability in such broad, non-specific terms). . . .
>
> . . .
>
> In conclusion, from the review of the medical records, it appears that as of the date in question (12-15-02) it would be expected that the claimant would be capable of performing sedentary work activities, using [an] ergonomic chair, with occasional repositioning to minimize his discomfort throughout the workday, but remaining predominately in the seated position during the workday.

[A.R. 0418-20] (emphases omitted).

Orthopedist Charles Gouffon performed an IME, following interview and file review, on May 20, 2004. Dr. Gouffon commented that

11

> From the evaluation today, Mr. Lawhorn appears to have chronic low back pain. He was rather dramatic in his subjective findings today. Objective findings were not terribly dramatic but I was impressed that he appeared to be in pain and have a great deal of difficulty taking his back through a range of motion. His history is pretty consistent for back pain since the time of surgery and his x-ray findings suggest that he underwent surgery as indicated, probably with a satisfactory result from the fusion standpoint, but clearly not a satisfactory result for relief of his pain. Based on the review of multiple medical records, his story has been consistent over a number of years. It would be my impression that Mr. Lawhorn continues [to be] significantly impaired. I would rate his impairment at 13% of the whole body[.]

[A.R. 0116].

Nortel then wrote to Dr. Gouffon, requesting more specific work-related opinions. [A.R. 0117]. Dr. Gouffon responded that plaintiff "[c]ould probably perform sedentary work [with] accommodation to allow change of position frequently, but [he] currently requires narcotic pain medication which could limit his ability to work." [A.R. 0118].

On the basis of this medical record, in a fourteen-page letter dated August 11, 2004, Nortel's Employee Benefits Committee notified plaintiff that it would uphold the decision terminating his LTD benefits. [A.R. 0087-100]. The letter included a summary of the pertinent medical records and concluded that the clinical data did not support the existence of a condition rendering plaintiff "unable to perform any reasonable occupation" as defined by the plan. The letter specifically stated:

12

> After reviewing this information, the Committee determined that it supported Prudential's conclusion that [plaintiff] is not "Totally Disabled" within the definition under the Plan that requires that there be objective clinical documentation of an inability to perform any reasonable occupation. The Committee determined that there is subjective evidence, i.e. self reports, of continuing pain. However, the objective medical evidence has been determined by several IME's to support that Mr. Lawhorn has the physical capacity to perform a sedentary occupation, i.e. a reasonable occupation based on his skills and education. The limitations described by his treating physicians are within the description of a sedentary occupation. The reports submitted by Mr. Lawhorn's physicians and functional capacity evaluators support that his skills and capacities would fit a sedentary position, except that he does not (due to his self-reports of pain) tolerate prolonged static positions. The Committee determined that the evidence supports that use of an ergonomic chair and breaks for repositioning and standing would be reasonable accommodations for that limitation that would enable Mr. Lawhorn to perform sedentary functions that were identified as appropriate for him, based on his skills and education. Therefore, the Committee voted to uphold the decision of Prudential and to deny [the] appeal.

[A.R. 0099-100].

V.

*Analysis*

Decisions concerning eligibility for ERISA benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation and quotation omitted).

13

After applying the highly deferential arbitrary and capricious standard of review to the record in this case, the court concludes that the termination of plaintiff's LTD claim should be upheld. The administrative record contains sufficient evidence to support defendants' decision. Defendants reasonably determined that the records and opinions of Dr. Maguire, the FCE, Dr. Kennedy, Dr. Foye, and Dr. Gouffon cumulatively support the conclusion that plaintiff is capable of performing "a reasonable occupation" as defined by plan - in this case, a sedentary job with certain postural and exertional limitations.

Although he was "unsure" of plaintiff's prognosis for returning to work [A.R. 0827], treating surgeon Maguire imposed restrictions on lifting, stooping, and bending and opined that " I think he would have trouble in occupations that involved prolonged standing without allowing him to sit." [A.R. 0450]. These statements, collectively, illustrate at a minimum that Dr. Maguire thought it was possible for plaintiff to return to work with accommodations regarding sitting, lifting, stooping, and bending.

Similarly, the FCE performed by Knoxville Physical Therapy concluded that plaintiff falls into the sedentary job classification, although he "does not tolerate prolonged static position of sitting that most sedentary positions require." [A.R. 0433]. This opinion, too, supports the conclusion that plaintiff can perform sedentary work with a sit/stand option. Further, the conclusions of Dr. William Kennedy's Independent Medical Examination expressly contemplated "*[f]uture activities of ... employment*" subject to postural and exertional limitations. [A.R. 0428] (emphasis added).

14

Dr. Foye's file review agrees that the opinions of the above-cited physicians contemplate the potential for certain sedentary occupations. There is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination[,]" particularly where - as here - the review was thorough and a hands-on examination was conducted by another physician. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295-96 (6th Cir. 2005). Further, as will be discussed below, Dr. Foye reasonably discounted the opinions of Drs. Wohlwend and Hankins.

As for examining orthopedist Gouffon, that physician certainly did not discount plaintiff's subjective complaints of pain. [A.R. 0116]. Nonetheless, he opined that plaintiff "[c]ould probably perform sedentary work [with] accommodation to allow change of position frequently, but [he] currently requires narcotic pain medication which could limit his ability to work." [A.R. 0118].

Plaintiff argues that the record "unequivocally establishe[s]" that he is disabled under the plan. Plaintiff relies most heavily on the opinions of Drs. Wohlwend and Hankins.

As discussed, Dr. Wohlwend wrote that plaintiff "continues to be totally disabled from work secondary to failed back syndrome. . . . He can not stand longer than 30 minutes and he has to change position often. He has limited lifting, bending and stooping ability." [A.R. 0805]. However, defendants's decision correctly noted that Dr. Wohlwend offered no limitation regarding sitting. [A.R. 0093]. Further, the court observes that Dr. Wohlwend's broad and conclusory opinion is unsupported by *any* records documenting a

15

treating or examining relationship with plaintiff. [A.R. 0805-06].

Nor does Dr. Hankins' opinion demonstrate that defendant acted arbitrarily and capriciously. Dr. Hankins concluded that

> *[w]ith the pain and restrictions indicated by Dr. Wohlwend*, he cannot perform the essential functions of his prior job. I do not believe that he can meet the demands of any other job for which he is qualified in terms of his age, education, and work experience for as long as he has his current restrictions.

[A.R. 0800-01] (emphasis added). Dr. Hankins revised his initial report to add that

> I do not believe that Mr. Lawhorn can meet the demands of the work he was normally performing at the time of his disability or any other reasonable occupation for which he is qualified in terms of his education, training, or experience *with the restrictions indicated by Wohlwend, the FCE ordered by Dr. Maguire, and those of Dr. Kennedy who agrees with the results of that FCE.*

[A.R. 0190] (emphasis added). First, as noted, the conclusory opinion of Dr. Wohlwend is of limited value. Also, as discussed, the FCE and the report of Dr. Kennedy each suggest that plaintiff is capable of sedentary employment with accommodation. Lastly, the parameters of Dr. Hankins' opinion ("I do not believe that he can meet the demands of any other job for which he is qualified") are not the same as the plan's second-phase LTD disability standard ("you will be considered unable to work if you are unable to perform any reasonable occupation. A 'reasonable occupation' is any job you are <u>or could become qualified to do</u> with your education, training or experience."). [A.R. 0016] (emphasis added).

16

## VI.

### *Conclusion*

Despite the plaintiff's reported pain, the court cannot say that defendants' decision to discontinue LTD benefits was irrational, unfounded, or without reasoned explanation. In reaching its conclusion, the court has considered: (1) the SSA's determination that plaintiff is disabled, which, "though certainly not binding, is far from meaningless," *Calvert*, 409 F.3d at 294; and (2) Nortel's inherent conflict of interest in its dual roles of plan administrator and claim payor. *See id*. at 292-93. Nonetheless, under the circumstances of this case and the administrative record as discussed above, the court cannot say that it was unreasonable or irrational for defendants to conclude that plaintiff is unable to work *as that concept is defined in the second phase of the LTD plan presently at issue*.

Accordingly, the court will affirm the decision to discontinue plaintiff's LTD benefits. An order reflecting this opinion will be entered.

ENTER:

                                                    s/ Leon Jordan
                                           United States District Judge